UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

HEATHER S.,[1]

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendants.

3:19-cv-1252-JR

OPINION & ORDER

Russo, Magistrate Judge:

Plaintiff brings this proceeding to obtain judicial review of the Commissioner's final decision denying plaintiff's application for disability insurance benefits and supplemental security income. Plaintiff asserts disability beginning May 1, 2015, due to anxiety/panic attacks, systemic lupus, migraines, and post-traumatic stress disorder. Tr. 219, 281. After a hearing held on May 15, 2018, an Administrative Law Judge (ALJ) determined plaintiff was not disabled. Tr. 33-82,

---

[1] In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Order uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION & ORDER

27. Plaintiff contends the ALJ erred by: (1) rejecting plaintiff's symptom testimony; (2) rejecting the opinion of plaintiff's treating physician; and (3) rejecting lay witness testimony.

A.   Symptom Testimony

Plaintiff's treating rheumatologist, Dr. John Griffin, diagnosed plaintiff with systemic lupus erythematosus in 1985. Tr. 726. As a result of lupus, plaintiff has also been diagnosed with chronic renal insufficiency. E.g., Tr. 392. In addition, plaintiff's condition has resulted in inflammation in other parts of her body resulting in cerebritis (e.g., Tr. 480), vasculitis primarily impacting her feet and toes (e.g., Tr. 457), and arthritis primarily impacting her hands (e.g., Tr. 726).

Plaintiff reported she has trouble with lupus and vasculitis making it hard to wear shoes or stand for long periods of time. Tr. 302. Plaintiff testified she could use her hands for writing, for example, "maybe 20 minutes, 30 minutes before cramping" and she is uncertain as to how long she would need to rest her hands before writing for another 30 minutes. Tr. 68-69. She did state when she worked at Volunteers of America, she would "push through the pain" requiring her to rest the next day. Tr. 70-71. Now that she is not working, not pushing herself, she does not have as many days where she needs to just lie down. Tr. 71.

Plaintiff also testified her back constantly hurts impacting her ability to sit, necessitating a need to get up and move around, and stand. Tr. 71. Plaintiff stated that even with a low stress job, her body would not let her work 40 hours per week. Tr. 72.

The ALJ rejected plaintiff's symptom testimony as inconsistent with the medical record, inconsistent with her daily and work activities, and because it was inconsistent with the effectiveness of treatment. Tr. 22. Specifically, the ALJ found plaintiff "has been extensively working different jobs for the last several years" after her alleged onset date. Tr. 22.

The ALJ noted plaintiff worked a clerical job for a few hours a week, worked for her church on an "as needed" basis, worked part-time at Dollar Tree for four hours a day/three days a week, and worked for Volunteers of America from August 2017 until November 2017 above the substantial gainful activity level in the fourth quarter of 2017, and has been looking for work since then. Tr. 22; Tr. 241-42 (earning between $85 and $912 a quarter at Christ the Vine Lutheran Church in 2015-2017); Tr. 242 (earning between $671 and $912 per quarter at Dollar Tree in 2015-2016); Tr. 245 (earning between $0 and $3971 per quarter in 2017 at Volunteers of America). Plaintiff's work activity after her alleged onset date was all part-time with a maximum of 20 to 30 hours per week during a three-month period in 2017 at Volunteers of America. Tr. 61. Plaintiff stated, however, that she could not handle the workload or complete the tasks she was assigned. Tr. 61. She also noted the part-time work made her lupus worse, "stiffened [her] up more," and caused pain and fatigue. Tr. 61-62. As noted above, when plaintiff pushed through the pain, she would have to take the next day off. Accordingly, plaintiff's work activity was not inconsistent with her allegations of her lupus symptoms preventing her from working a full-time job of 40 hours per week. The ALJ erred in rejecting plaintiff's symptom for this reason. See Lingenfelter v. Astrue, 504 F.3d 1028, 1038-40 (9th Cir. 2007) (evidence that a claimant tries to work and fails actually supports allegations of disabling pain and the Social Security Administration even permits benefits recipients to work on a trial basis for nearly nine months without affecting disability status).

The ALJ found insufficient evidence in the medical record for feet swelling and discoloration. Tr. 22. However, the record is replete with evidence of lower extremity pain, swelling, and discoloration. Tr. 404, 405-406, 411, 413, 418, 389, 391-392, 455, 457, 462, 466,

474, 475, 480, 481, 533, 535, 514, 516, 471, 566, 573, 576-577, 676, 687, 685.  The ALJ erred in rejecting plaintiff's testimony for this reason.

The ALJ also rejected plaintiff's allegation of disabling symptoms based on daily activities of driving, going to church, playing board games and card games, attending school and sporting events, shopping, attending to her personal care, cooking, cleaning, mowing, reading, and playing with her kids. Tr. 23.  However, "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, [or] driving a car … does not in any way detract from her credibility as to her overall disability. One does not need to be utterly incapacitated in order to be disabled." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001).  Accordingly, the ALJ erred in rejecting plaintiff's allegations of disabling symptoms for this reason.

The ALJ cherry-picks certain treatment notes and asserts they demonstrate no progression of lupus, no severe organ damage, and effective treatment.[2]  Tr. 23-24.  The record supports the waxing and waning nature of lupus.  E.g., Tr. 62-63, 302.  Moreover, it is improper for an ALJ to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings.  Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989).  Although the ALJ may consider the objective medical record, given that the ALJ's other reasoning for discrediting the subjective testimony does not stand up to scrutiny, the ALJ also erred in discrediting plaintiff's allegations of disabling symptoms for this reason as well.  The ALJ thus erred in rejecting plaintiff's statements regarding the severity of her symptoms preventing full-time work.

---

[2] The record does not show effective treatment for plaintiff such that she can endure the stress of full-time work. E.g., Tr. 727 (stress increases anxiety); Tr. 533 (anxiety increases pain level); Tr. 333, 466, 533, 684 (worsening pain).  The record also shows while medications "helped" on occasion, on other occasions they did not.  Tr. Tr. 405, 362, 680.  Thus, the ALJ's conclusion that treatment was effective is not supported.  See Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989).

B.      Treating Physician

On April 16, 2018, Dr. Griffin opines:

> [Plaintiff] has been a patient since approximately 1985 when, as a teenager, I diagnosed her with systemic lupus erythematosus. I know [plaintiff] to be a fighter and she has always been motivated to lead a normal life and not let her disease define or limit her. She pushes herself, at times to the detriment of her health. She is optimistic and cheerful by nature and not prone to complaining. These traits have helped her to bounce back from prior flares of her SLE. However, over the last several years her disease has progressed. Her disease has become more difficult to treat and her symptoms are increasing in regularity and severity. She has gradually become more disabled. She is at increased risk for heart attack, stroke, and cancer due to active SLE.
> Her SLE has had other organ or system involvement including but not limited to vasculitis, and peripheral neuropathy with sicca complex. She has generalized anxiety disorder and joint pain and swelling with muscle pain. More recently, she experienced a transient loss of function in her right hand. An abnormal contrast MRI of her brain is worrisome for possible multiple sclerosis, requiring further neurological evaluation.
> Over the last few years, although there have been periods where she experienced comparatively less severe symptoms, I believe her overall health has deteriorated--the arthritis of the MCP and PIP joints in her hands and the arthritis of the MTP joints of both feet have worsened. At one point, I thought she would lose the use of her left fourth and fifth toes to severe vasculitis. Her overall pain, intermittent swelling of the hands and feet, fatigue, sleep apnea and morbid obesity in addition to the progression of her SLE, have diminished her body's capacity to respond to stress. The pain, stiffness and swelling In her hands can worsen with activity and she at those times must limit the use of her hands. For all these reasons I do not believe she is healthy enough to perform any full-time work, no matter how motivated to do so she may be. When she is feeling well, however she might be able to work 10-15 hours a week, provided stress is kept to a minimum and the hours are flexible to accommodate fluctuations and flares of her condition. The pathology of SLE is poorly understood. but it is clear that stress increases the severity of her symptoms. If she were to work more than this, I would expect her health to deteriorate further.

Tr. 726-27.[3]

---

[3] The state medical consultants limited plaintiff to a range of light work. Oddly, the ALJ rejected these opinions as overestimations of plaintiff's abilities in light of her lupus, subjective complaints of pain, and medical record demonstrating occasional flare ups of pain in the upper and lower extremities. Tr. 25. The ALJ also found these sources failed to account for manipulative and postural restrictions. Tr. 25.

Page 5 – OPINION & ORDER

The ALJ assigned little wight to this opinion finding it: inconsistent with the overall record; failed to account for effectiveness of treatment and improved condition; vague and conclusory; lacked diagnostic testing; conflicted with minimal mental health treatment; and did not account for the substantial work activity and daily activities in which plaintiff engaged. Tr. 24-25.

As noted, the ALJ rejected the other medical source opinions that contradict Dr. Griffin's opinion. Thus, it is unclear if the ALJ was required to provide clear and convincing reasons based on substantial evidence to reject Dr. Griffin's opinion or specific and legitimate reasoning. Regardless, the ALJ failed to offer a sufficient basis to reject the opinion.[4]

As noted above, the record is replete with observations of limitations from lupus flare-ups. Emergency room records show plaintiff's inability to move her right hand and signs of demyelinating disease. Tr. 477-480, 481-82, 685 (follow-up with Dr. Griffin); see also Tr. 404, 405-406, 411, 413, 418, 389, 391-392, 401, 455, 457, 462, 466, 474, 475, 480, 481, 533, 535, 514, 516, 471, 566, 573, 576-577, 676, 687, 685 (demonstrating lower extremity pain, swelling, and discoloration. Other specific references include: edema up to the knee (Tr. 418, 576); right wrist swelling (Tr. 417); tenderness in the heel of her hands (Tr. 422); tender streaks on the right hand (Tr. 420); pain in the right thumb and index finger and fifth toes bilaterally; both feet tender to palpation (Tr. 420, 466); pain on palpation of the MCP joints and aching in many places (Tr. 406); swelling and pain in several MCP, PIP, and MTP joints (Tr. 404, 679, 675, 407, 677, 473); and toe swelling and tenderness (Tr. 391, 516, 412 ). The record also documents vasculitis issues: discoloration, described as "dusky coloring"; "cyanotic discoloration"; blue, purple, or black

---

[4] The ALJ's decision predates the current regulations for assessing medical opinion based on supportability and consistency. 20 C.F.R. § 404.1520c(c).

coloration, temperature change, pain, swelling, and gangrene. Tr. 413, 389, 391-392, 455, 457, 462, 466, 474, 475, 480, 481, 533, 535, 514, 516, 471, 687, 685.

The opinion is neither vague nor conclusory. Dr. Griffin explained his long relationship with plaintiff, his observations over that time and how his understanding of the disease along with plaintiff's complaints lead him to conclude that work-related stress exacerbates plaintiff's condition limiting her to 10-15 hours of work per week. In addition, plaintiff's limited work activity is consistent with this opinion as it demonstrates plaintiff's attempts to work related to the very flare-ups which Dr. Griffin opined would lead to plaintiff's deteriorating condition.

The ALJ generally cites portions of the record indicating plaintiff "is feeling ok," (e.g., Tr. 413) or there is "no evidence of edema (e.g., Tr. 465) and even a "slight, but measurable reduction in her anxiety and depression" (e.g., Tr. 531). This does not provide substantial evidence of the effectiveness of treatment or improvement of her condition sufficient to discount the opinion of Dr. Griffin. The treatment notes indicate plaintiff regularly suffered with her symptoms consistent with flare-ups caused by lupus. Dr. Griffin noted treatment "helped" (e.g., Tr. 422), but also notes the strong immunosuppressant Imuran was "not working," that Xanax or alprazolam worked in the past but not always, and that CBD did not relieve plaintiff's pain. Tr. 405, 362, 680. The record simply does not support the ALJ's conclusion that treatment helped plaintiff's condition allowing plaintiff to work full-time.

It is unclear why the ALJ believes mental health treatment was minimal. The record shows 21 counseling sessions. She was diagnosed with anxiety disorder with the counselor specifically noting:

> The client has worked diligently to make progress and sustainable change in the last year. She attended therapy regularly until recent months when many of her goals were nearly accomplished through her own very consistent efforts. She has made laudable change in her efforts to establish and maintain healthy

Page 7 – OPINION & ORDER

> boundaries (especially with a very domineering mother), reduce a lifelong pattern of persistent and pervasive pain (Lupus), and empower herself as the "change agent.'
>
> However, she still appears to meet the criteria for Generalized Anxiety Disorder (F41.1)- She reports experiencing frequent episodes of feelings restless, edgy, tiring easily, trouble concentrating, irritability, increased muscle tension and trouble sleeping. These symptoms have caused a markedly increased distress that has impaired work and personal functioning. He reports these have lasted more than 6 months.

Tr. 637-38.

Moreover, plaintiff uses several psychotropic medications including Zoloft, Xanax, and Buspirone. Tr. 414, 409, 405, 474, 472, 470, 685, 683-684, 682, 681, 679, 677-678, 676, 675. Again, the record does not provide substantial evidence to support the ALJ's findings.

Finally, plaintiff's daily activities are not inconsistent with Dr. Griffin's opinion. Dr. Griffin was aware of plaintiff's activities including attempts at work. Tr. 418, 456, 678. Moreover, as noted above, theses activities are consistent with plaintiff's inability to work full-time. Accordingly, the ALJ erred in rejecting Dr. Griffin's opinion. See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) ("Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record for so doing.").

C.    Lay Testimony

Plaintiff's mother provided a statement in which she stated plaintiff has lupus flare-ups causing her to spend time at home, stress makes her lupus worse, and she cannot work "day-in and day-out." Tr. 351.

In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1053

(9th Cir. 2006). If the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness. Id.

The ALJ rejected the lay testimony for reasons similar to his rejection of plaintiff's testimony. As noted below, the decision should be remanded for further consideration and upon reconsideration, the Commissioner may revisit the statement of plaintiff's mother.

E.    Remand

If the ALJ erred in some respect in reaching a decision to deny benefits and the error was not harmless, ordinarily, the remedy is to remand for further proceedings. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014). A remand for an award of benefits should only be made in rare circumstances. Id. at 1100.

To remand for an award of benefits under the credit-as-true rule, the Court should first ask whether the ALJ has failed to provide legally sufficient reasons for rejecting evidence. Id. Here, the ALJ failed to provide legally sufficient reasons for rejecting plaintiff's testimony and the opinion of Dr. Griffin which both establish disability if accepted.

The Court should next ask whether the record has been fully developed, i.e., whether there are outstanding issues that must be resolved before a determination of disability can be made and whether further administrative proceedings would be useful. Id. at 1101. Administrative proceedings are generally useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence may prove enlightening in light of the passage of time. Id.

The record in this case could benefit from further development to help resolve ambiguities regarding the medical opinions given the consultants' opined plaintiff is generally capable of light work. Moreover, even if no outstanding issues remain, the Court must determine whether the

record, taken as a whole, leaves not the slightest uncertainty as to the outcome of the proceeding. Id. Even if all three requirements are met, remand for further proceedings is still within the Court's discretion. Id. at 1102. The Court finds a remand for further proceedings is appropriate in this case.

## CONCLUSION

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), the decision of the Commissioner is reversed and remanded for further proceedings. The Clerk is directed to enter a judgment accordingly.

DATED this 20th day of March, 2023.

      /s/ Jolie A. Russo
      JOLIE A. RUSSO
      United States Magistrate Judge